IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No.  95-cv-02756-WDM-OES (consolidated with 97-cv-00897-WDM-OES)

SHEILA R. DEITZ,

     Plaintiff,

v.

THE UNIVERSITY OF DENVER, COLORADO SEMINARY, et al.,

     Defendants.

_____

## AMENDED ORDER ON OBJECTIONS TO MAGISTRATE JUDGE'S ORDERS
_____

     This resolves two long-pending motions concerning attorney fee lien claims against funds deposited in the court registry as part of the settlement of the underlying lawsuit. The first is Plaintiff Sheila R. Deitz's ("Deitz" or "Plaintiff") Motion for Dismissal of Lien and Certification (ECF No. 376) and the second is the motion of the Andrew T. Brake law firm ("Brake") for an order determining the allocation of settlement proceeds (ECF No. 414).  Both motions were referred to Magistrate Judge O. Edward Schlatter who treated each as a non-dispositive motion to be decided by his own order pursuant to Fed. R. Civ. P. 72(a) and not as a dispositive matter to be the subject of his recommended disposition pursuant to Rule 72(b).  On February 28, 2001, Judge Schlatter entered his order denying Deitz's motion for dismissal of lien and awarded lien claimant Nancy Johnson ("Johnson") her lien in the amount of $40,986.92 (ECF No. 409).  On April 9, 2001, Judge Schlatter entered his order denying the Brake law firm's

motion and directed that the Clerk disburse the settlement proceeds to Johnson (ECF No. 426).  Plaintiff timely objected to Judge Schlatter's order denying her motion to dismiss (ECF No. 417) and Brake timely objected to Judge Schlatter's denial of its motion on April 19, 2001 (ECF No. 430).  As part of the objection process the parties filed transcripts of the two-day motion hearing (ECF Nos. 428, 429 & 431).  These objections are properly before me for resolution.  I have fully reviewed the motions, briefs, objections and all other relevant pleadings, the transcripts and status hearings.  I conclude that oral argument would not aid my decision-making process.  For the reasons set forth below, I interpret Magistrate Judge Schlatter's orders as recommendations which I reject in part, accept in part, and modify in part pursuant to Rule 72(b)(3) as set forth below.

<u>Background</u>

Johnson[1] filed this action on behalf of Deitz alleging claims of discrimination based on gender, disability, and retaliation ("*Deitz I*") on October 31, 1995.  Compl., ECF No. 1.  Johnson remained counsel of record until she was allowed to withdraw on March 15, 1996.  Ex. 21.  These disputes arose out of that representation.

Deitz was a psychologist employed as a full professor in the School of Professional Psychology at Defendant University of Denver ("DU").  Deitz advertised herself as a forensic psychologist who had consulted in more than 1,000 legal cases, served as an expert witness in more than 200 cases, and had worked as a professor of

---

[1] Johnson passed away on March 20, 2009 (*see* ECF No. 511).  Accordingly, on May 8, 2009, I granted a motion to substitute Debbie Quackenbush, in her capacity as Personal Representative for Johnson's estate, for Johnson in this action (ECF No. 512). I shall refer to the Estate of Johnson as "Johnson" in this order.

law.  *See* Ex. 36.  Deitz also had some experience as a litigant, as she had previously sued her former employer, the University of North Dakota.  Deitz's husband, William Thoms ("Thoms"), was an attorney and a law professor who specialized in labor and employment law.  He was quite involved throughout Deitz's litigation against DU.

In September of 1995, Deitz retained Johnson to act as her attorney to review her claims and perhaps file suit against DU.  Deitz agreed to pay Johnson $145 an hour which was a discount from her ordinary hourly rate of $160.  *See* Ex. 1.  As matters evolved, Johnson testified that Deitz and Thoms told her they would have significant money to spend on the case after January 1, 1996.  It was agreed that Johnson would not be paid much until the first part of 1996, while in the meantime she would not be sending detailed bills.  *Id.*  In fact, the record indicates that no regular bills were ever sent, monthly or otherwise, during the entire period of representation.

The case apparently involved a multitude of issues concerning employment and status within an academic community.  Those issues, combined with personalities of the parties, resulted in Johnson charging an extraordinary amount of time on this case. From the beginning until December 14, 1995, she claims to have spent 453.25 hours in a little over three months.  *See Deitz Case Timeline with Fees,* Ex. 37.  Between December 15, 1995, and January 31, 1996, she claims 319.10 hours, constituting 6.6 hours daily, including weekends and Christmas.  For February, Johnson has claimed 339.42 hours, which reflects charging almost 12 hours for each of the month's 29 days. (It was leap year.)  Ex. 37.  For March, she charged 158.65 hours through March 22, 1996, representing over 7 hours per day, including weekends. For each and every day

from February 1, 1996, until March 22, she billed an average of 9.7 hours daily.[2]  *Id.*

Ultimately, she asserts spending 1,270.42 hours in her time alone for total fees of

$184,210.90, at $145 per hour.  *Id.*  Adding paralegal, law clerk and investigation fees

raised her fee claim to $202,376.70, which, together with various expenses of

$12,327.46, totaled $214,704.16.  Ex. 38.

Against these accruing, unbilled charges, Deitz paid $8,500 in 1995.  *See* last

page of Ex. 38.  In January 1996, rather than paying large amounts as Johnson

expected, Deitz paid another $15,000 in three separate payments of $5,000.  *Id.* 38.

However, during that same time period Johnson's fees increased from $75,255 by the

end of 1995 to $111,990.75 to January 31, 1996, representing additional fees of

$36,635 for January.  Accordingly, as of the end of January 1996, after deduction of the

amounts paid by Deitz, Johnson was allegedly owed $88,490.75 for her fees alone

without consideration of expenses and staff costs.[3]

In mid-February, the parties met to discuss the accruing fees and the failure of

Deitz to pay.  On February 19, 1996, Johnson presented her letter to Deitz and Thoms

entitled "Amended Legal Services Agreement."  Ex. 11.  At the same time she

presented a bill for services through February 18, 1996, which totaled $142,289 in fees.

Ex. 43.[4]  The February 19 letter sets forth in detail the perceived demands of the

---

[2]She charged 498 hours over a 51-day period or an average 9.761 hours for 51 consecutive days.

[3]Johnson's accrued fees as of January 31, 1996, totaled $111,995.75, while she had been paid $23,500 by that time, leaving $88,490.75 unpaid.

[4]At the hearing Deitz did not recall ever receiving the bill reflected in Ex. 43 while Johnson testified it was included with the February 19 letter (Ex. 11). I accept

litigation and the work to be performed by Johnson and others on behalf of both Deitz and Thoms.  It addressed the fact that she had not received funds promised to her and different rates for various type of work needed to be charged to compensate her for continuing to represent Deitz in the litigation.  The letter also emphasized the demands of Deitz's case were limiting her practice for other clients. Deitz and Thoms accepted and agreed to the terms of the February 19 letter and added a handwritten commitment to pay fees as follows: $6,200 on February 19, 1996; $28,000 to be paid on February 24, 1996; and $67,000 to be paid on March 1, 1996.  Ex. 11 at  5.  However, when Deitz and Thoms did not make the payment due on February 24, Johnson drafted a motion to withdraw and informed Deitz and Thoms of her intent to do so unless a payment was made.

The parties met again on Sunday, February 25, 1996, and important revisions were again made to their agreement, both in terms of services to be performed and amount owed for those services.  As summarized in Johnson's February 26, 1996 letter to Deitz (Ex. 15), Thoms was to replace Johnson as primary counsel but she agreed to provide a limited scope of legal and paralegal services for which she was to be paid upon submission of her bill.  As to the amount owed Johnson as of February 25, Johnson agreed to write down amounts due as summarized in her letter (Ex. 15):

> I have agreed to write my bill down to a total of $120,000, less amounts already paid, totaling $29,600. [The amount was actually $29,700.00, *see below*.]. You agree to bring me your Uva [*sic*] check endorsed over to me on the day you receive it, and another check on March 1 in the amount of $65,000 (plus an additional $1,500 if Pat Pacey is unwilling to contract

---

Magistrate Judge Schlatter's determination that Deitz was less credible and therefore resolved this dispute in favor of Johnson.

separately with Bill for the remainder of her fee for preparing her report. . . . .)

The precise amount of this "write-down" is unclear.  At the time of the February 19 conference, Johnson submitted a bill of $142,289 for her time alone.  Ex. 43.  As of February 25, the date of the "write-down," she may have accrued as much as another forty or more hours since February 19.  *See* Ex. 37 at p. 2.  However, when she presented her fee claims for work performed after February 26, she expressly provided that her letter "bill" was pursuant "to the fee arrangement entered into with you and Bill Thoms on Sunday, February 25" and the statement was "for services rendered from and including February 26 through and including March 3, 1996."  Ex. 18.  Similarly, her second letter "bill" of March 18, 1996, provided that it too was pursuant to this February 25 agreement but covered the two-week period "including March 3-March 18, 1996."  Ex. 26.  From these exhibits and their sequence I infer that the "write-down" encompassed all fees and expenses through February 25, 1996, so that the total amount due Johnson as of that date was the stated $120,000 before any credits for payments actually made.[5]

Against that $120,000 and any other amounts found owing, it is undisputed that Deitz and Thomas paid Johnson the following amounts on the following dates.  (*See*

---

[5]In terms of fees charged by Johnson alone this amounted to a reduction of approximately $30,000.  Exhibit 43 indicates that her accrued fees to February 18, 1996, were $142,289.  Her gross billing shown on Ex. 37 indicates she would have charged another $6,000 or more between February 18 and February 25, 1996.  In addition, her out-of-pocket expenses ultimately totaled $12,327 and there were several thousand dollars in paralegal and other staff charges.  *See* Ex. 37.

6

Ex. 38):

| | |
|---|---|
| Oct. 6, 1995 | 1000.00 |
| Oct. 23, 1995 | 1000.00 |
| Nov. 9, 1995 | 2500.00 |
| Nov. 15, 1995 | 1000.00 |
| Dec. 6, 1995 | 3000.00 |
| Jan 2, 1996 | 5000.00 |
| Jan 12, 1996 | 5000.00 |
| Jan 31, 1996 | 5000.00 |
| Feb. 20, 1996 | 6200.00 |
| Feb. 28, 1996 | 29937.78[6] |
| March 12, 1996 | 60000.00[7] |
| March 19, 1996 | 1500.00 |
| TOTAL: | $121,137.78 |

Accordingly, it appears at first blush that Deitz and Thoms had paid more than the "write-down" amount of $120,000 by $1,137.78.  However, the $1,500 payment on March 19, 1996, was in direct response to Johnson's request for $1,500 to pay for costs of copying after the February 25 "write-down."  *See* Ex. 26 at  3.  Removing the $1,500 credit reduces the credit against $120,000 to $119,637.78, leaving $362.22 unpaid

---

[6]Apparently, the $29,937.78 were the proceeds received by Deitz for her University of Virginia retirement which the parties originally estimated to be $28,000. *See* the handwritten payment schedule contained in Ex. 11 and mentioned in Ex. 15.

[7]These funds were paid from Thoms' retirement which were originally estimated to be $67,000.  *See* February 19, 1996, handwritten payment schedule in Ex. 11.  By February 26, the amount was changed to $65,000.  *See* Ex. 15.  However, when Thoms withdrew the money, a $5,000 withdrawal fee was withheld, leaving $60,000 actually paid.  *See* Ex. 19.

without considering the billings after February 25.

Turning to the post February 25 billings, the March 4 letter billing totaled $8,763.75 for legal and other fees.  Ex. 18.  The March 18 letter totaled $32,223.17.[8] Ex. 26 at p. 3.  This amount included $5,000 which Johnson apparently believed was still owing based upon her apparent belief that there was a commitment to pay $65,000 by March 1 when Thoms paid only $60,000 on March 11.  Ex. 26 at  3.  That assertion cannot be reconciled with the record.  For one thing, the handwritten commitment contained in Exhibit 11 was for $67,000, nor $65,000.  Further, given the write-down to $120,000 after the February 19 date of Ex. 11 and the total payments summarized above, I find no validity to a claim that $5,000 was somehow unpaid.  Subtracting $5,000 leaves $27,223.17 billed for the two-week period ending March 18.  Accordingly, even though the testimony of the parties does not satisfactorily address these issues the exhibits themselves indicate that the following amounts would otherwise be claimed due Johnson (without consideration of the merits of the billings):

| | |
|---|---|
| Unpaid balance of $120,000 | $362.82 |
| March 4 bill | $8,763.75 |
| March 18 bill | $27,223.17 |
| TOTAL: | $36,349.14 |

Notwithstanding these calculations and without reconciliation of the write-down to $120,000 for all fees and expenses through February 25, Johnson has asserted that

---

[8]Neither I nor a law clerk could replicate Johnson's totals in her March 18 "letter billing."  This inability is directly traceable to her failure to submit standard bills with hours, rates and expenses.  We could come within a few hundred collars which is *de minimus.*

she is owed $40,986.92, comprised of the $8,763.75 billed on March 4 (Ex. 18), and the

$32,223.17 billed on March 18, 1996 (Ex. 26), which includes the $5,000 she believed

was unpaid.  Johnson declared the $40,986.92 immediately due as of March 18, but

agreed it could be covered by a promissory note.  Ex. 26. at p. 3.  Thereafter, the

parties discussed a promissory note for this fixed amount and Johnson prepared three

or more versions with different payment terms and interest rates (from 9% to 12% per

annum) but all the drafts have the same principal amount of $40,986.92.  *See* Exs. 23,

24, 25 & 27.

On March 14, 1996, Thoms entered his appearance on Deitz's behalf (ECF No.

54) and Johnson was allowed to withdraw on March 15 (Ex. 20 & 21).  During this time

there is no evidence that Deitz and Thoms disputed the principal amount of $40,986.92.

When they sought to obtain the litigation files from Johnson, Johnson asserted a

retaining lien on the file, allowing her to maintain possession of the file until her fees

were paid in full.  Eventually she agreed to deliver the files upon the express condition

that Deitz and Thoms would execute the note version of their choosing to be exchanged

for the files.  *See* Ex. 28.  Instead of executing and returning a note, Thoms accepted

delivery of the files and sent a letter indicating some questions about the wording of the

note but concluded with the following language:

> Please be clear that we are not trying to avoid payment.  We acknowledge
> our receipt of services and that you had advanced monies for
> subcontractors as well.  However, by the end of the day we should have
> new counsel and we will run the instrument past him.
>
> We will be in contact about this promissory note and how best to structure
> this indebtedness.

Ex. 30.  Deitz later testified at the evidentiary hearing that she did not intend to sign the

document requiring her to pay for the kind of charges Johnson was making.

On March 26, 1996, Johnson filed a notice of attorney's lien (ECF No. 61) in the amount of $40,986.92. On the same day, the Brake law firm entered its appearance on Deitz's behalf (ECF No. 60).

In 1997, Brake filed another suit on behalf of Deitz in the Denver District Court which was removed to this court as Case No. 97-cv-897. ("*Deitz II*") Pursuant to Defendant's motion, Magistrate Schlatter consolidated the actions with Case No. 95-cv-2756 being the lead case. ECF No. 177.

In February 1999, Johnson filed a voluntary petition in Bankruptcy Court as Case No. 99-11782-MSK. She filed the required schedules which included as an asset an accounts receivable from Deitz and Thoms totaling $93,000 (Amended Schedule D) and a threatened malpractice claim against her by Deitz and Thoms as an unsecured claim (Amended Schedule F). Ex. A to Brake's Supplement to Motion (ECF No. 420). The Bankruptcy Trustee determined that the non-exempt property had no realizable value and that Johnson was entitled to a discharge. Ex. B to Brake's Supplement to Motion (ECF No. 420). The Bankruptcy Court discharged her on May 18, 1999.

In April, 2000, Deitz filed her motion to dismiss Johnson's lien asserting that Johnson's billing was "outrageous" and that her lien was "an abuse of process and frivolous." ECF No. 376 at ¶8. The matter was referred to Judge Schlatter "for ruling and/or recommendation." ECF No. 381.

At the same time, the parties to the underlying lawsuit mutually settled their claims. On April 20, 2000, the parties filed a stipulated motion and part of the settlement was that the proceeds were "for the sole use and benefit of Plaintiff Sheila

10

Deitz and her present counsel and, if adjudicated, her former counsel, Nancy Johnson. Payment of these funds into the Registry will allow Plaintiff to contest the validity and/or reasonableness of the pending Attorney's Lien."  ECF No. 378 at p. 2.  Judge Schlatter granted that motion and ordered, among other things, "that the settlement funds are to be disbursed only upon further Order of the Court after resolution of issues surrounding the Attorney's Lien filed by Nancy Johnson, Esq. in Case No. 95-WM-2756."  ECF No. 379 at p. 2.  The parties then filed a stipulated motion for dismissal with prejudice of all claims, noting that the $75,000 settlement proceeds had been deposited with the Registry "to be disbursed only upon order of the Court."  ECF No. 385 at p. 2.  [9]The motion was granted and the case was dismissed with prejudice on May 1, 2000.  ECF No. 389.

Thereafter, Judge Schlatter scheduled a hearing on the Deitz motion to dismiss the lien for December 6, 2000.  Deitz was represented by Craig Fleishman.[10]  Johnson was represented by John R. Webb.  The hearing covered two days.  Deitz, Johnson, Deitz' expert, Daniel Friesen, and others testified and exhibits were admitted. Transcripts of the proceedings were filed as ECF Nos. 428, 429 & 431.  Most of the evidence presented has been covered above but further background on the testimony concerning reasonableness of fees is warranted.

Deitz's expert, Daniel Friesen, opined that the billing was unreasonable.  Deitz Ex. 4.  He concluded that a reasonable fee would be a small fraction of the fees

---

[9]Brake and Thoms were attorneys of record for Deitz at this time.

[10]Even though they remained attorneys of record for Deitz, neither the Brake law firm nor Thoms appeared.

charged, concluding that something in the nature of $30,000 or so would have been appropriate.  Magistrate Judge Schlatter agreed, expressing a strong opinion that a claim of over $200,000 in fees was unreasonably excessive, indeed "the most shocking that I have encountered for cases of this nature."  Order Denying Sheila Deitz's Mot for Dismissal at 8,  ECF No. 409.

Friesen categorized the case as "relatively straight forward" (Deitz Ex. 4) and gave his expert opinion that a reasonable fee for handling the case through trial should have fallen between $100,000 and $150,000.  According to him, when Johnson withdrew the case was 20 to 25% complete, and, even after the write-down Johnson apparently asserts entitlement to something over $160,000.  Friesen testified that the excessive billing was the result of Johnson's inefficiency, engaging in unnecessary work, and spending excessive time on issues that were not significant.  He gave as an example of over $30,000 for work on the original and amended complaints, a task he thought should cost between $3,000 and $5,000.  Similarly, almost 140 hours were spent on Rule 26(a) disclosures, which Friesen opined should have taken between eight and twelve hours.  Given the status of the case when Johnson withdrew, Friesen opined that she had overcharged Deitz well in excess of $100,000.

Johnson responded that many factors contributed to the large number of hours worked and billed, including the complexity of the case,[11] the aggressive posture of opposing counsel, extensive discovery issues, Deitz's demands and her lack of

---

[11]Johnson disputed Friesen's description of the case as "relatively straight forward" claiming significant complexity because of Title IX ramifications, breach of contract claims, efforts to include other plaintiffs' counterclaims and witness intimidation. Dec. 7, 2000 Transcript.  ECF No. 431 at 64-95.

cooperation.  Johnson said the agreement at the outset was that Deitz would provide assistance, in particular regarding discovery and other matters, so that Johnson would not need to spend as many hours preparing the case.  Johnson testified that Deitz did not provide assistance despite numerous requests.  Johnson's evidence also indicated that Deitz was often unresponsive or late in her responses to specific inquiries for information.  Johnson also emphasized that it was Deitz who sought to include numerous claims and several additional defendants which required further professional work.

On February 28, 2001, Judge Schlatter denied Plaintiff's motion to dismiss and awarded Johnson the amount of her lien claim ($40,986.92) plus interest at the rate of 12% per annum and attorney's fees and costs.  ECF No. 409.  He concluded that the parties had reached agreement with regard to both the write-down amount and the billings thereafter, applying the principles of accord and satisfaction.  *Id.* at 24-26.  He also concluded that Deitz was bound to pay Johnson based on promissory estoppel, with the agreement being the essential terms of the note, including the obligation to pay interest at the rate of 12% as well as costs and attorney's fees.  *Id.* at 26-32.

Deitz objected to the order (ECF No. 417, refiled as ECF No. 436).  Deitz's principal arguments were that an attorney's lien attaches only to the extent the attorney's fee is reasonable, which it was not, and that there was no agreement between the parties.  *Id.* at pp. 4-9.  Deitz also argues, without legal authority, that there was no accord and satisfaction or estoppel.  *Id.* 9-10.

13

Meanwhile, Brake (or three of its members)[12] filed a notice of attorney's lien on March 9, 2001, asserting an entitlement to one-third of the settlement, or $25,000, together with costs and expenses of $5,010.69.  ECF No. 412.  This was followed on March 15, 2001 with Brake's motion to allocate settlement proceeds and suspend any distribution to Johnson.  ECF No. 414 as supplemented by ECF No. 420.

On April 9, 2001, Judge Schlatter denied Brake's motion and ordered that the Clerk disburse the entire settlement proceeds to Johnson; however, the order was stayed pending my ruling on pending objections.  ECF No. 426.  Brake objected to this order.  ECF Nos. 430 & 436.

On April 24, 2002, Brake moved to reduce its lien claim to judgment (ECF No. 444) which Johnson opposed.  (ECF No. 446)[13].  Judge Schlatter denied the motion, principally because he had previously concluded that Johnson's lien was entitled to priority and the amount due with interest, over $98,000, exceeded the $75,000 deposited.[14] (ECF No. 447).  Brake did not object to or appeal the ruling.

Both the Deitz and Brake objections remain pending and their resolution is necessary to determine the parties' entitlements.  Deitz's objection asks that I set aside Judge Schlatter's February 28, 2001 order and dismiss Johnson's attorney's fee claim.

_____

[12]The notice of attorney's lien is filed by "Andrew T. Brake, Esq., Brian L. Lewis, Esq. and Lee T. Judd, Esq. of the Law Firm of Andrew T. Brake."  ECF No. 412.

[13]Like their notice of lien, the movants are the three named individual lawyers of the "law firm of Andrew T. Brake. P.C."

[14]Judge Schlatter also concluded Brake had waived its claim "because of delays in attacking Mr. Johnson's claims and its delays in pursuing its lien."  Order at 2, ECF No. 447.

14

Brake's objection asks me to set aside Judge Schlatter's April 9, 2001 order denying the

Brake motions and determine the issues and the amounts to be disbursed to each

party.  ECF No. 527.

Standard of Review

The issues presented by the objections concern post-judgment attorney fees

which should be considered as dispositive motions.  *Ins. Co. of N. Am. v. Bath*, 968

F.2d 20 (10th Cir. 1992) (citing *Colo. Bldg. & Const. Trades Council v. B.D. Andersen*

*Const. Co., Inc.*, 879 F.2d 809, 811 (10th Cir. 1989)).  Judge Schlatter erroneously

considered them as nondispositive upon which he could rule pursuant to Rule 72(a).

Nevertheless, I treat Judge Schlatter's orders as recommendations on a dispositive

matter to which there have been timely objections.  Accordingly, I must resolve the

issues *de novo* and may accept, reject or modify the recommended dispositions,

receive further evidence or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).  However, where as here, the magistrate judge has seen and

heard the witnesses, I may rely on his findings of fact and credibility determinations.

*See Widermuth v. Furlong,* 147 F.3d 1234, 1236 (10th Cir. 1998); *United States v.*

*Raddatz*, 447 U.S. 667, 680-81 (1980).  (To substitute a judge's own credibility

appraisal for the magistrate's without seeing or hearing the witnesses would raise

serious questions.)  I will accept the magistrate judge's credibility findings.

Discussion

1. Procedural Posture; Applicable Law; Burdens of Proof

My *de novo* review ultimately concerns the merits of the two pending motions,

Deitz's motion to dismiss Johnson's lien claim because, based upon the record and in

15

particular the expert testimony, the claimed fees are unreasonable and Brake's motion to have the court determine the allocation of the settlement proceeds between the two consolidated cases and to assist in distribution of the settlement proceeds among the lien claimants.

Since both of these motions pertain to an attorney's fee lien claim in the state of Colorado, Colorado law applies to these issues. *Apa v. Qwest Corp.*, 402 F.Supp. 2d 1247, 1248 (D. Colo. 2005); *Donaldson, Hoffman & Goldstein v. Gaudio*, 26 P. F.2d 333, 335 (10th Cir. 1958). As a movant, Johnson and Brake each has the burden of persuasion as to their respective motions.[15] However, the ultimate issue for each attorney is the validity of her/his lien claim and it is the claimant who bears the burden of proof. *B'd of Cnty Com'rs of Jefferson Cnty v. Quaintance*, 116 Colo. 544,183 P.2d 569, 571 (1947); *In re Marriage of Mitchell*, 55 P.3d 183, 185 (Colo. App. 2002).

2.   Johnson's Standing to Enforce Charging Lien

Brake claims that Johnson lacked standing to enforce her lien because she did not correctly schedule her lien against Deitz in Johnson's Chapter 7 Bankruptcy (Case No. 99-bk-11782); and therefore, the bankruptcy trustee could not effectively abandon the claim. *See* Brake Obj. at 4, ECF No. 527. Brake argues that, if the claim was not properly abandoned, it would remain property of the bankruptcy estate, the estate would be the real party in interest and, without joining the trustee, I could not determine the matter of distribution of the money in the Registry of the Court.

---

[15] At the commencement of the two-day hearing it was determined that Deitz as the movant had the burden of going forward (Tr. 35, ll. 12-16).

The question of standing is "whether the litigant is entitled to have the court decide the merits of the dispute or of  particular issues. . . .  Standing imports justiciability:   whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Abandonment is a fundamental doctrine of property law which, within the bankruptcy context, is intended for the benefit of creditors of the debtor.  *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 621 (7th Cir. 2002).  "They are not intended for the benefit of alleged violators of the debtor's legal rights. . . ." *Id.* (citing 11 U.S.C. § 554).  The Bankruptcy Code provides that any property that is scheduled in the debtor's schedule of assets, prior to the time that the case is closed, is abandoned to the debtor and regarded as administered for the purposes of closing and reopening the case.  8A CJS Bankruptcy § 650 *Abandonment of Property of the Estate* (citing 11 U.S.C. § 554(c)); *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524 (8th Cir. 1991).

By examining Johnson's disclosures, her creditors would have been made aware that Johnson was a creditor of Deitz and Thoms, and that they in turn may have had a malpractice claim against Johnson. Neither the trustee, nor any creditor, nor the United States trustee timely requested a revocation of discharge.  *See* 11 U.S.C. § 727(e).   Given this history, Brake's objection is overruled as the trustee properly abandoned the account receivable to Johnson and she was the proper party to attempt to collect her attorney's charging lien.  With this procedural posture in mind, I turn to the other issues raised by the parties.

17

3.  Allocation between Consolidated Cases; Priorities between Claimants

Brake's motion seeks to allocate most if not all of the proceeds to Case No. 97-WM-897, *(Deitz II)* the case that Brake filed, because it argues that most of the claimed damages in the original case No. 95-WM-2576 *(Deitz I)* were eliminated when emotional distress damages were relinquished and Plaintiff remained employed by DU.  In general, consolidation does not merge the cases "into a single cause or change the rights of the parties or make those who are parties in one suit parties in another." *Johnson v. Manhattan RY. Co.,* 289 U.S. 479, 496-97 (1933).  To the extent matters may be appropriately allocated or distinguished, each of the consolidated *Deitz I* and *II* cases retained their separate identity as confirmed by the Tenth Circuit in *Farmington Cas Co. v. United Educator's Ins. Risk Retention Grp., Inc.,* 36 Fed. Appx. 408, 415 (10th Cir. 2002).  Nevertheless, settlement of the consolidated cases was a single, global settlement which expressly acknowledged that the settlement fund was subject to the Johnson and Brake claims.  Although Johnson performed no work in *Deitz II* and was not attorney of record at the time of settlement, her efforts were nevertheless related to and formed the basis of the ultimate settlement as implicitly recognized by the parties.  Although it is established law in Colorado that an attorney's fee lien claimant cannot recover fees performed on wholly unrelated matters,[16]   Johnson's work was

---

[16]*See Collins v. Thuringer*, 21 P.2d 709 (Colo. 1933); *Matter of Est. of Benney*, 790 P.2d 319, (Colo. 1990) (stating, "[w]here the attorney obtains or assists in obtaining a judgment in favor of the client, therefore, the charging lien extends only to attorney fees for those professional services rendered in obtaining the judgment and not for unrelated services." *Id.* at 323.

plainly related to the issues leading to the ultimate settlement of the consolidated cases. Accordingly, she should be entitled to benefit from the settlement and the parties present no basis for allocating between the two claimants solely on the basis of the separately filed cases.

To the extent the settlement fund is inadequate to satisfy both claimants, then the entitlements must be determined by a long-recognized priority system of the first to file. Colorado law recognizes that, under its statute, the attorney's lien begins to accrue with the commencement of lawyer service. *People ex rel MacFarlane v. Harthun*, 195 Colo. 38, 581 P.2d 716 (1978); *In the Matter of the Estate of Benney*, 771 P.2d 7, 8 (1988). Here that means that the Johnson lien claim relates back to 1995, and the Brake claim back to 1996. Johnson filed her notice of attorney's lien in 1996, while Brake waited until 2001. In these circumstances, if both parties are enforcing valid liens and the settlement funds are inadequate to cover both, then Colorado recognizes a prior right of Johnson to be paid in full before Brake, the subsequent claimant, receives anything. *Id.*; *In re the Marriage of Mann*, 697 P.2d 778, 780 (Colo. App. 1984). Brake's objection is overruled.

4. <u>Validity of Lien Claims</u>

Both claims are based on an attorney lien in the settlement proceeds pursuant to Colo. Rev. Stat. § 12-5-119. Such liens can be enforced against those proceeds once the settlement agreement has been carried out. *MCI Constructors, Inc. v. Dist Court*, 799 P.2d 40, 44 (Colo. 1990). Here the parties expressly contemplated that the deposited proceeds would be subject to the Johnson lien claim if it is determined to be

19

valid and reasonable.  *See* Stip Mot. at 2, ECF No. 378.  No reason is given why the proceeds would not also be subject to the Brake claim other than that the Johnson lien has priority.  *See* Response to Lien, ECF No. 419.  Accordingly, if the lien claims are valid, each may reach the funds deposited in the Registry.

Turning to the validity of the liens, the statute grants lien rights in the judgment, or in this case, the settlement amount, that the lawyer "obtained or assisted in obtaining, in whole or in part . . . ."  Colo. Rev. Stat. § 12-5-119.  The lien may be perfected by filing a proper notice with the Clerk of the Court where the action is pending.  *Id.*  The notice shall set "forth specifically the agreement of compensation between such attorney and his client. . ."  *Id.*  However, the mere filing of the notice does not foreclose or enforce the lien without more.  *In re Marriage of Mitchell*, 55 P.3d at 186.  To enforce the lien, the claimant must bring a "proper civil action."  Colo. Rev. Stat. § 12-5-119.  A "proper civil action" includes an independent action or the filing of a motion to reduce the lien to judgment in the action giving rise to the lien claim.  *In re Marriage of Mitchell*, 55 P.3d at 185.

The proceeding to enforce a lien is equitable in nature.  *In re Marriage of Rosenberg*, 690 P.2d 1293, 1294 (Colo. App. 1984); *Fillmore v. Wells*, 15 P. 343 (Colo. 1887).  Because the lien right arises only by statute, strict compliance with the statute is necessary for success.  *In re Marriage of Mitchell*, 55 P.3d at 185.

Finally, and although not expressly stated in the statute, Colorado authority has superimposed a reasonableness standard requiring that attorney lien claims be limited to "reasonable fees and expenses."  *Apa* , 402 F.Supp. 2d at 1250; *In re Marriage of Shapard*, 2004 WL 2128802 (Colo. App. 2004); *People ex rel McFarlane*, 581 P.2d at

20

42 (statute "gives the attorney a lien on the judgment <u>to the extent of his reasonable</u> <u>fees</u> . . .") (emphasis added).

a. <u>Proper Civil Action Within Statute of Limitations</u>

Since it is a necessary precondition to enforcing an attorney lien claim, I first address whether each lien claim was "enforced by the proper civil action" pursuant to Colo. Rev. Stat. § 12-5-119.[17]  As confirmed by the record, Johnson never filed a motion in this case to enforce her lien claim nor did she initiate a separate civil action or proceeding.  As a consequence, Brake argues that the Johnson claim should be denied because any conceivable statute of limitations has long passed.  *See In Re Marriage of Mitchell*, 55 P.3d at 186.  Relying on *Gold v. Duncan Ostrander & Dingess*, 143 P.3d 1192, 1193 (Colo. App. 2006), Johnson responds that a "proper civil action" has been held to include not only independent civil action but also a motion in a proceeding giving rise to the lien claim.  Johnson argues that such inclusive, as opposed to exclusive, language contemplates other possible proceedings such as an objection, motion to dismiss, motion to strike or motion to quash would also qualify as a "proper civil action," citing *Apa*, 402 F.2d 1247 (ruling based on objection to lien); *In Re Marriage of Mitchell*, 55 P.3d at 184 (ruling based on motion "to determine the enforceability of the lien"); *Seitz v. Seitz*, 33 Colo. App. 180, 181, 516 P.2d 654, 655 (1973) (motion to quash); *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 444 (Colo. 2000) (motion to strike).

---

[17]By orders dated November 22 and November 29, 2010, I directed the parties to address the issues of whether "a proper civil action" was timely filed by each attorney. ECF Nos. 535 & 539.  Each filed a response and expanded their arguments far beyond my inquiries.  I decline to consider arguments outside of my limited inquires..

I agree with Plaintiff that Deitz's motion to dismiss was treated by Magistrate Judge Schlatter as essentially a motion to enforce the lien claim.  The matter was set for a two-day hearing at which Deitz and Johnson had full opportunity to be heard.  Although the Brake law firm did not participate, its partners were listed as co-counsel for Plaintiff Deitz and, at the time of the hearing, the Brake firm had not filed a notice of lien or otherwise asserted a direct financial interest in the proceeding.  I conclude that the client's motion to dismiss the lien claim put the enforcement of the lien claim at issue to the same effect as if the claimant had moved to reduce the lien to judgment in the civil action that gave rise to the lien claim, and therefore, constitutes a "proper civil action" under § 12-5-119.  *See Gold*, 143 P.3d at 1193 (citing *Gee v. Crabtree*, 560 P.2d 835 (1977) and *In Re Marriage of Mitchell*, *supra*).

With that conclusion, Johnson's lien claim of March 26, 1996, based upon a modified agreement or accord, was subject to the six-year statute of limitations set forth in Colo. Rev. Stat. § 13-80-103.5; *see also, Rotenberg v. Richards*, 899 P.2d 365, 368 (Colo. App. 1995).  Accordingly, the Deitz motion to dismiss, filed in April, 2000, was within the period of limitations.

Turning to the Brake firm lien claim, it was filed on March 9, 2001, and is allegedly based upon a written contingent fee agreement belatedly submitted by the Brake firm with its responsive brief on December 27, 2010 (ECF No. 551).  Pursuant to agreement, the Brake firm was entitled to one-third of the settlement.  Assuming that the existence of the agreement is proved, the six-year statute of limitations would likewise be applicable and the attempt by Brake to reduce its lien to judgment on April 24, 2002, is well within the statute of limitations given that the amount was not due until settlement

in March of 2001.  Accordingly, I conclude that, without determining their validity, each claim was the subject of a "proper civil action" within the statute of limitations.

b. Johnson Claims

Applying these standards to the Johnson claim, and as indicated above, Johnson's professional efforts assisted, at least in part, in obtaining the settlement proceeds and is therefore eligible to assert a lien under Colo. Rev. Stat. § 12-5-119.  Her Notice of Lien Claim (ECF No. 61) states that the claim is based on Exhibit 11, the February 19, 1996 letter agreement.  I find and conclude that this is a sufficiently specific description of the "agreement of compensation between such attorney and his client" to meet the statutory mandate, as it at least gives notice of what became an ongoing process of mutating fee agreements.  The initial agreement, the September 22, 1995 letter (Ex. 1), set terms, some of which were followed and some of which were not, by both parties.[18]  In February, when Johnson finally presented a bill for $142,289, the evidence indicates a modified agreement was reached as set forth in the February 19, 1996 "Amended Legal Service Engagement."  Ex. 11.  I find and conclude, however, that this agreement was further modified but a week later as summarized in the February 25, 1996 letter.  Ex. 15.  The essential terms of this latest agreement were that all accrued charges through February 25, 1996, were written down to a flat

---

[18]The hourly rate of $145 was set for the duration.  Deitz appears to have timely paid two installments of $1,000 as prescribed on p. 2 of Ex. 1.  *See* Ex. 38.  The agreement, however, called for monthly bills which Johnson did not provide until February 1996.  Nevertheless, Deitz paid varying amounts each month prior to February 1996, totaling $23,500.

$120,000 and work thereafter was to be billed for immediate payment.  The amended agreement was confirmed by the parties' subsequent courses of action:  Deitz (and Thoms) paid $89,937.78 toward the $120,000 and another $1,500 for expenses.  *See* Exs. 37 and 38.  As a consequence, by mid-March all but $362.22 of the $120,000 agreed amount had been paid.  *See* 6-8 *supra.*  At the same time, Johnson sent out "letter bills" for immediate payment on March 4 (Ex. 18) and March 18 (Ex. 26).

From this sequence of events, I conclude that Deitz and Johnson initially entered into a contract in accordance with the September 22, 1995 letter.  Ex. 1.  There was an offer, acceptance and consideration.  Thereafter there was partial performance as well as failure to perform.  By February, 1996, the parties entered into negotiations about their differences which were finally resolved by the February 26, 2006 agreement (Ex. 15) with its two key elements.  I conclude from these facts that the parties modified their original agreement resulting in a modified contract with its key elements of the write-down and immediate payment for future work.  *See Dime Box Petroleum Corp. v. Louisiana Land and Exploration Co.*, 717 F.Supp. 717 (D.Colo. 1989), *aff'd Dime Box Petroleum Corp. v. Louisiana Land & Exploration Co.*, 938 F.2d 1144, 1148-50 (10th Cir. 1991).

Alternatively, as Magistrate Judge Schlatter concluded and the parties have argued, an accord analysis may be used to resolve the dispute.  I conclude the evidence shows the parties' intent to accept the February 26 agreement as a substitute for the previous agreement so that the original agreement is discharged and the February 26 agreement was to be enforced pursuant to Colorado law:

The general rule is that the underlying duty or debt is not discharged until

24

there is satisfaction on the accord.  That is, the accord is executory. . . .
<u>However, an accord agreement can be substituted for the original demand
and once the substitution is made, the remedy for breach lies in the new
agreement.</u>

*Caldwell v. Armstrong*, 642 P.2d 47, 49 (Colo. App. 1981).

With regard to the performance of the modified agreement, the undisputed

evidence of payments demonstrate that, with the exception of the *de minimus* of

$326.22, Deitz satisfied the write-down obligation with payment[19] and the only remaining

issues concern the claimed $40,986.92, principally attributable to Johnson's post-

February 26 work.

In resolving those issues, I begin with the finding that the evidence summarized

above shows that Johnson was simply in error to assert that $5,000 of the $120,000

had not been paid.[20]  Accordingly, the lien claim must be reduced $5,000 to $35,986.92

to which would be added the $362.22 shortage for a total claim of $36,349.14 otherwise

due under the modified agreement.  Next, legal basis for this claim is the same modified

agreement or accord described above.[21]  In addition to the evidence summarized

above, the March 22, 1996 Thoms letter to Johnson (Ex. 30) confirms an agreement to

pay Johnson for post-February 25 work and advances.  However, concluding that there

was an agreement or that promissory estoppel applies does not resolve this claim.

---

[19]If one were to construe the parties' agreement as an executory accord this
payment would also constitute satisfaction of that write-down accord.

[20]As indicated above, it appears that Johnson was fixated on the $67,000 or
$65,000 figures used in Exs. 11 and 15 and she failed to properly account for all
payments received when she prepared her last "letter bill" on March 18 (Ex. 26).

[21]Johnson also asserted, and Judge Schlatter so concluded, that the doctrine of
promissory estoppel provided a basis for recovery.

Since this matter has proceeded as a lien enforcement, the fee claim is limited to a reasonable amount even if the parties agreed to a larger amount. *People ex rel MacFarlane,* 581 P.2d at 42. Accordingly, I must determine whether the claimed fee is reasonable.

Generally, Colorado law determines reasonableness by consideration of the factors listed in Rule 1.5 of the Colorado Rules of Professional Conduct which are pertinent to the particular case. *See Losavio v. McDivitt*, 865 P.2d 934, 936 (Colo. App. 1993). This determination is a question of fact for myself. *Madison Capital* Co. *LLC v. Star Aquisition VIII*, 214 P.3d 557, 560 (Colo. App. 2009). A reasonable attorney fee may also be established by calculating the lodestar amount which represents the number of hours reasonably expended multiplied by a reasonable hourly rate. *Dubray v. Intertribal Bison Coop.*, 192 P.3d 604, 608 (Colo. App. 2008). Assuming the reasonableness of the hours and rate, the lodestar amount creates a strong presumption of reasonableness. *Spensieri v. Farmers Alliance Mut. Ins. Co.*, 804 P.2d 268, 270 (Colo. App. 1990).

Applying those principles to the facts of this case, it is undisputed that $145 is a reasonable hourly rate. On the other hand, the evidence compels great doubt as to the reasonableness of the hours charged. A qualified expert concluded that the total fees, as well as particular examples, were unreasonable even to the extent of a four or five multiple. Regrettably, expert Friesen's report and testimony did not focus on the last few weeks of billings which are covered by the lien claim amount and Deitz's macro opinion of fees does not specifically address the reasonableness of the fees charged

after February 25, 1996.[22]  As I have indicated, I do conclude that the parties arrived at

an agreement or accord concerning the write-down which appears to have amounted to

an approximate thirty percent reduction.[23]

Deitz and Brake have argued from the beginning that the proof of

unreasonableness should result in an overall reduction of all fees now claimed by

Johnson so that her lien claim would be denied.[24]  I conclude, however, as Magistrate

Judge Schlatter did, that the preponderance of the evidence indicates that an informed

agreement between, on the one hand, a college professor with significant litigation

experience and her partner/spouse who is a law professor ultimately admitted to the

practice of law before this court, and the lawyer on the other hand, resulted in a binding

---

[22]However, Friesen's report (Deitz Ex. 4) does discuss the billing for the "Buckley subpoena" which did concern hours billed in the two March billings.  He concluded that particular over billing was three or four times what the cost should have been although he did indicate uncertainty as to his knowledge of the work required for a Buckley subpoena.  Tr., ECF No. 431 at 34.  Further, many hours of work in discovery issues were charged in March and Friesen characterized the hours charged for discovery to be "grossly excessive."  Deitz Ex. 4 at 6.

[23]Using the total billing of all fees and expenses charged of $214,704.16 contained in Ex. 38, I estimate the amounts otherwise claimed due by Johnson through February 25, 1996, to be approximately $177,000.  This number is arrived at by subtracting attorney and other fees incurred from February 26 through the final billing date from the total fees of $202,376.  This results in approximately $167,000 in fees as of February 25.  In addition, the total expense number of $12,327.46 was reduced by the approximate $2,300 incurred after February 25, 1996, leaving approximately $10,000 in expenses attributable to activities prior to February 26, 1996.  An estimated total claimed, therefore, on February 25, would have been approximately $177,000.  The modified agreement of $120,000 is approximately seventy percent of the total or a 30% reduction.

[24]Neither Deitz nor Brake have filed any pleading asserting entitlement to return of fees and expenses actually paid Johnson, the $121,137.78 set forth in Ex. 38 and summarized on p. 7 above.

agreement to reduce fees and expenses to $120,000.00, albeit an excessive amount. Accordingly, the only remaining issue is the reasonable amount, if any, Johnson is entitled to receive for the post-February 25, 1996 services.

In general, Friesen was critical of the number of hours charged on a per day basis—even one instance in excess of twenty-four hours—and pointed out the well-known fact that one's productivity and efficiency decrease dramatically the longer one works beyond eight or so hours. *See* Tr. at 43–45, ECF No. 431.

Further, and as summarized above, the number of hours charged by Johnson for her services in February and March of 1996 are simply not credible to me as a judge of fourteen  years and practicing attorney for more than twenty-five years of hourly billing, including several instances of complex litigation.  Billing almost 340 hours in one 29-day month (February 1996) exceeds my understanding.  Even in trial, which she was not, twenty-nine days straight of twelve hours of chargeable time each day simply defies professional belief.  Similarly, from March 4, 1996 through March 11, she billed a minimum of 11.9 hours to a maximum of 18.7 hours (plus one additional hour per billing) per day for a total of 113.35 hours in eight straight days or 14.1 hours per day without a break.

My skepticism finds strong support in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983), a frequently cited case for its extensive analysis of reasonable attorney fees.  In noting that the determination should be whether the "hours reported were reasonably expended and hence are billable" one should keep in mind standard billing practices.  In *Ramos*, the Tenth Circuit noted that some lawyers bill more than 2,000 hours per year but most range from 1200 to 1600 hours, essentially six to seven billable hours per day

for a five-day week.  *Id.* at 553.  From that background, Johnson's claimed hours are off the graph.  For six months she claims over 1,270 hours while supposedly serving other clients.  That rate would result in over 2,500 billable hours per annum--a quite remarkable number even if she had no other clients.

As noted on page 27, Friesen did give specific examples of the unreasonableness of some of the hours charged in March.   On the other hand, some charges in the March billings are not patently unreasonable. For example, preparing for and attending the deposition of Plaintiff Deitz resulted in three days of billings at approximately eleven hours a day.  Ex. 38 at 71-72.  On balance, however, the state of the record is such that there is substantial doubt whether the billed hours were reasonable.  As a lien claimant, Johnson has the burden of persuasion.  *Bd of Cnty Com'rs of Jefferson Cnty v. Quaintance, 116 Colo. 544, 183 P.2d 519 (1947).*  That includes the reasonableness of the fee claimed.  *People ex rel McFarlane,*195 Colo. 38, 581 P.2d 716.  Viewing the evidence, the strong opinion of Friesen of unreasonableness, as an independent expert, was not counterbalanced by any independent expert on behalf of Johnson.  Indeed, the only justification for the extensive number of hours have been Johnson's own general explanations.  *See*  12-13. Although Johnson's testimony sought to explain the extraordinary hours charged, she did not provide any detailed explanation for any particular charge that would enable me to determine whether the hours were reasonable or to make predicate findings of reasonableness pursuant to CRPC Rule 1.5.  I "must determine not just the hours expended by counsel, but which of those hours were reasonably expended and the litigation."  *Ramos,* 713 F.2d at 553.  To do so, I need to examine the hours spent on

specific tasks given the complexity, strategies and opposition in the case.  *Id.* at 554.  I should avoid awarding fees for duplicative work. *Id.*  In order to conduct that review, it is the expectation in this court that the attorney "keep meticulous, contemporaneous time records" which reveal "all hours for which compensation is requested and how those hours were allotted to specific tasks--for example, how many hours were spent researching, how many used reviewing the client, how many drafting complaint, and so on." *Id.* at 553.  As noted by Friesen, and as a cursory review of the "letter" bills and Johnson's summary bills reveal, allocation for specific tasks is lacking.

Placing this evidence in the context of the extraordinary hours claimed, I find and conclude that Johnson has failed to prove by a preponderance of the evidence that her fee claim is reasonable.  Further, given the state of the record, I cannot parse her billings to determine what portion of the claimed hours were reasonably charged other than by speculation or application of some arbitrary formula.  There simply is a failure of proof of reasonableness of the hours charged, albeit that some hours may well have been reasonable.

Accordingly, the lien claim for Johnson's claimed hours should be denied.

This ruling is not applicable to that portion of the bills reflecting expenses incurred by Johnson, including staff time. Friesen's opinion did not focus on these charges and no one has questioned their reasonableness or that they were incurred.

On this record Johnson is entitled to enforcement of her lien to the extent of those expenses which are calculated as follows:

### March 5, 1996 Letter Bill

Jane Eastland -   43.00 hours @ $15 per hour                    $645.00

| | | |
|---|---|---|
| Susan Whitaker - 40.00 hours @ $20 per hour | $800.00 | |
| 3.50 hours @ $30 per hour | $105.00 | |
| Total for March 5 | | $1,550.00 |

March 18, 1996 Letter Bill

| | | | |
|---|---|---|---|
| Jane Eastland - | 27.00 hours @ $15 her hour | $750.00 | |
| | Expenses | $7.51 | |
| | | | $757.51 |
| Susan Whitaker | 40.00 hours @ $20 per hour | $800.00 | |
| | 1.75 hours @ $30 per hour | $52.50[25] | |
| | 40.00 hours @ $20 per hour | $800.00 | |
| | 5.00 hours @ 20 per hour | $100.00 | |
| | | | $1,752.50 |
| Ed O'Connor | 8.00 hours @ $50 per hour | $400.00 | |
| | Tapes | $16.00 | |
| | | | $416.00 |
| Anne Dewitt | 7.00 hours @ $15 her hour | $105.00 | |
| | Unpaid invoice | $525.00 | |
| | | | $630.00 |
| Karl Kanouff | legal research | | $520.50 |
| Thomas Tomko | | | $112.50 |
| Nightrider | | | $1,015.16 |
| Notebooks | | | $160.00 |
| Total for March 18 | | | $5,364.17 |

In addition, Johnson should recover the unpaid portion of the $120,000 of $362.82.

In sum, therefore, Johnson has proved she is due $7,276.99, consisting of the sum of the March 4 expenses ($1,550), March 18 expenses ($5,364.17) and the unpaid balance of the agreed $120,000 ($362.82).  Accordingly, Brake's objections are

---

[25]It appears that Johnson transposed $52.50 into $25.50 in her letter.  See Ex. 26, p.1.

sustained in part and overruled in part.

    c. <u>Brake Claims</u>

Turning to the Brake lien claim, I first address whether I should even consider this matter since Brake failed to object to Judge Schlatter's dismissal of Brake's motion to enforce its lien.  Johnson argues that, under the "firm waiver rule," Brake has no right to a review of this issue.  *See Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164-65 (10th Cir. 1986); *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001).  This argument is misdirected.  The fact that I am not <u>required</u> to conduct a *de novo* review "does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard."  *Thomas v. Arn*, 474 U.S. 140, 154 (1986); *Allen v. Sybase, Inc.*, 468 F.3d 642, 655 (10th Cir. 2006) ("[A] party's failure to seek timely review does not strip a district court of its power to revisit the issue").  Under the circumstances presented, the Brake lien claim is intertwined with the Johnson claims.  For example, Judge Schlatter's order denying Brake's motion to enforce its lien was principally based on the perceived practicality that the award to Johnson as a matter of priority consumed the entire deposit amount and precluded any award to Brake.  With my ruling today monies would be available to at least partially satisfy the Brake claim if valid.  Because of Judge Schlatter's ruling, however, Brake was never given the opportunity to present evidence of its lien claim, including the contingent fee agreement, recently submitted to the court, or even the true identity of the lien claimant.  As a consequence, the record does not permit a full *de novo* review.  It does suffice, however, for me to conclude, as I have, that Judge Schlatter was in error to treat this

32

issue as nondispositive and to find and conclude in Johnson's favor so that no funds remained subject to the Brake lien claim.  Given my rulings and the fact that the $75,000 deposit with interest now exceeds $92,000, sufficient funds exist to at least partially satisfy a Brake lien claim if valid.  Brake (or the three members of the firm) should be given the opportunity to present their case, subject to any further challenges by Johnson or any other interested party.[26]

    d.  <u>Interest on Johnson Lien Claim</u>

Johnson claims interest on the amounts due fee statutory eight percent compound rate provided in Colo. Rev. Stat. § 5-12-102.  In particular, the statute provides where there had been no previous agreement, a creditor is entitled to such rate "for all monies after they become due on any bill . . ." § 15-12-102(b)(2).  Such interest rate is the mandate of the Colorado statute and I have no discretion to modify that rate because of delay or any other reason.  *Echo Acceptance Corp. v. Household Retail Servs. Inc.*, 267 F.3d 1068, 1092 (10th Cir. 2001).  Accordingly, Johnson is entitled to compound interest at the eight percent interest rate from March 18, 1996[27] until the date of this judgment.

For reasons stated, the objections to Magistrate Judge Schlatter's orders of Deitz

---

[26]As the settling Plaintiff, Deitz presumably has an interest in the funds deposited in the registry.  At the December 16, 2010 status hearing, both she and the Brake counsel stated on the record that there was no dispute between them concerning those funds.

[27]This is the date that Johnson set as a due date in her March 18, 1996 letter. Ex. 26 at p. 3.

and Brake are overruled in part, sustained in part and modified in part.

Accordingly, it is ordered:

1.  Deitz's motion to dismiss the lien (ECF No. 376) is granted in part and denied in part.  Judgment shall enter in Johnson's favor against Deitz in the amount of $7,276.99, together with interest at the rate of eight percent per annum compounded annually, from March 18, 1996, until February 16, 2011, the date of this order, in the amount of $15,684.92 for a total of $22,961.91 as of this date and $4.98 *per diem* interest until entry of judgment;

2.  Post-judgment interest shall accrue at the rate established pursuant to 28 U.S.C. § 1961 from and after the date hereof;

3.  Unless otherwise stayed, the Clerk of this court shall satisfy the judgment from the Court registry fifteen days after its entry;

4.  The Johnson lien claim is otherwise denied and dismissed with prejudice;

5.  Given the determination that the Brake lien claim is subordinate to the Johnson lien claim and the fact that the determination of the validity of the Brake lien claim is otherwise entirely independent of the Johnson claim, there is no just reason for delaying entry of judgment and I direct the Clerk to enter final judgment pursuant to Fed. R. Civ. P. 54(b) on the Johnson lien claim and the Deitz Motion to Dismiss (ECF No. 376) as set forth herein.

6.  Brake's motion to allocate (ECF No. 414) is denied as moot;

7.  Brake's motion to reduce Plaintiff's attorney's lien to judgment (ECF No. 444) is reinstated; and

8.  The parties shall promptly schedule a hearing on Brake's motion to reduce its

34

lien to judgment.

DATED at Denver, Colorado, on February 22, 2011, *nunc pro tunc* February 16, 2011.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge