IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 95-cv-02756-WDM-OES

SHEILA R. DEITZ,

      Plaintiff,

v.

THE UNIVERSITY OF DENVER, COLORADO SEMINARY, et al.,

      Defendants.

---

## ORDER ON PENDING MOTIONS

---

Miller, J.

      This matter is before me on the Motion to Reduce Plaintiffs' [sic] Attorney's Lien

to Judgment (ECF No. 444), filed April 24, 2002 by three attorneys with Andrew T.

Brake, P.C. (the "Brake Law Firm" or "Brake").  Also pending is Claimant Nancy

Johnson ("Johnson")[1] Estate's Motion to Alter or Amend Judgment (ECF No. 573) and

Motion for Recovery of Attorney's Fees and Expenses Incurred in Obtaining Judgment

Against Plaintiff (ECF No. 576).  The motions, all concerning attorney and costs claims,[2]

---

[1]Johnson passed away on March 20, 2009 (*see* ECF No. 511).  Accordingly, on May 8, 2009, I granted the motion to substitute Debbie Quakenbush, in her capacity as personal representative for Johnson's estate, for Johnson in this action (ECF No. 512). I shall refer to the Estate of Johnson as "Johnson"and use the feminine pronoun in this order.

[2]This case, which began as a presumably good-faith dispute between parties and which resulted in a modest settlement of $75,000 more than ten years ago, has been transformed into a seemingly unending battle between attorneys over fees wholly

are fully briefed, and a hearing was held on June 7, 2011.  For the reasons set forth

below, the motions will, with one exception, be denied.

BACKGROUND

I incorporate by reference the detailed background set out in my February 22,

2011 Amended Order on Objections to Magistrate Judge's Orders (ECF No. 556).  I

supplement that background with findings as a result of the June 7, 2011 hearing, as

well as some additional detailed findings of certain matters that were not essential to the

issues of the Amended Order but are now pertinent to the issues raised by the pending

motions.

Plaintiff testified at the June hearing that she entered into a written contingency

agreement with the Brake law firm, agreeing to pay one-third of the settlement amount,

together with expenses.  Strangely, the alleged agreement was not offered as an

exhibit.[3]  Nevertheless, both Plaintiff and attorney Brake represented on the record that

they had agreed that Brake was entitled to one-third of the $75,000 settlement or

$25,000, together with unpaid costs.  In a Statement of Attorney's Fees and Costs (ECF

---

disproportionate to the settled dispute.  As Plaintiff's original counsel, Johnson claimed
more than $214,000 in fees and expenses.  *See* Exhibit 38.  Subsequent counsel have
represented Johnson, on a *pro bono* basis, in an effort to recover $40,000 allegedly still
due her.  They have run up additional chargeable time and expenses of approximately
$170,000.  *See* ECF No. 576.  Plaintiff's substitute counsel, the Brake Law Firm, claims
to have spent over 1500 hours as of November 2009, together with expenses
apparently totaling over $60,000.  *See* ECF No. 520-6.  Using $200 an hour, a modest
rate in today's legal market, those hours would represent more than $300,000 of legal
time.  In short, the professionals have consumed significantly more than $700,000 in
legal time and expenses in a matter the actual litigants valued at $75,000.

[3]Attorney Brake did file what was represented to be a copy of a signed
agreement prior to the hearing.  ECF No. 551-1.

No. 520), filed November 18, 2009, Brian Lewis, a member of the Brake law firm, submitted an affidavit that the firm had spent almost 1,506 hours on this matter at that time.  In the same filing, an affidavit of the firm's office manager, Rebecca S. Smith, states that the unpaid costs of $4,780.32 remained due and owing from Plaintiff (ECF No. 520-6).  No further testimony or evidence concerning the fees and costs of Brake was presented.  In particular, no competent evidence of the reasonableness of the fees and costs was presented other than the statement of attorney Brake that the firm did not seek interest on the amount claimed due.

Concerning the Johnson fee claim, I make the following findings and additions to those contained in my February 22, 2011 amended order.  The initial "Legal Services Engagement" between Johnson and Deitz contained the following language:

> All amounts payable are due immediately upon your receipt of my bill.  Any amount not paid when due shall, at my election, bear interest at the rate selected by me but not to exceed 1.5% per month.  If I incur costs or expenses in collecting any amounts due, you agree to pay such costs and expenses, including reasonable attorneys' fees.

September 22, 1995 letter (Exhibit 1). Thereafter, and as discussed, when issues arose concerning payment, the parties entered into an "Amended Legal Services Agreement," a February 19, 1996 letter drafted by Johnson which purported to "completely supersede" the previous agreement, (Exhibit 11).  This letter contains the same fee provision as the September letter.  This was then followed by the February 26, 1996 letter again either amending the previous agreement or entering into a new accord. (Exhibit 15).  The February 26 letter does contemplate that Plaintiff will execute a promissory note for $27,000 at nine percent interest, but contains no language

3

concerning fees and costs or superseding any prior agreement.

Thereafter, the parties discussed a promissory note and Johnson prepared three or more versions with different payment terms and interest rates.  *See* Exhibits 23, 24, 25 and 27.  All notes contained identical language regarding default including the obligation of the makers to "pay or reimburse the Holder for all reasonable expenses, including any reasonable attorney's fees and costs, including deposition costs, incurred in establishing the debt, collecting the amount due, whether or not legal proceedings are there after instituted by the Holder . . . ."  *Id.*  Ultimately, Johnson conditioned delivery of the files to Plaintiff on the execution of the promissory note.  The Plaintiff's  then husband and new attorney accepted delivery of the files but sent a letter questioning the wording of the note, and concluding with the following language:

> Please be clear that we are not trying to avoid payment.  We acknowledge receipt of services and that you advanced monies for subcontractors as well.  However, by the end of the day we should have new counsel and we will run the instrument past him.
>
> We will be in contact about this promissory note and how best to structure this indebtedness.

Exhibit 30.  A note was never signed and Plaintiff later testified that she did not intend to sign any document requiring her to pay the amounts claimed by Johnson.

## STANDARD OF REVIEW

An award of attorney's fees is reviewed under an abuse of discretion standard. *Mares v. Credit Bur. of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986).  A motion to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e) should be granted only to address (1) an intervening change in the controlling law; (2) new evidence previously

4

unavailable; or (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  Such a motion is not an appropriate vehicle to "revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.  See also Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) ("A Rule 59(e) motion to alter or amend the judgment should be granted only 'to correct manifest errors of law or to present newly discovered evidence'") (citations omitted).

<u>DISCUSSION</u>

1.    <u>Claimant Johnson Estate's Motion to Alter or Amend Judgment </u>(ECF No. 573)

Johnson moves pursuant to Fed. R. Civ. P. 59(e) to alter or amend the judgment, claiming that I committed legal error by declining to award the estate any attorneys' fees.  Johnson contends that under Colorado law, "a fee request may not be summarily denied because the petitioner is seeking an excessive amount of attorney's fees."  Mot., ECF No. 573, at 2.  Johnson claims that I incorrectly failed to apply the lodestar analysis by not examining the billing records submitted to come up with some reasonable estimate of hours expended during the relevant time period.

As I noted at the hearing, my ruling regarding Johnson's entitlement to attorneys' fees was based not simply on the excessiveness of the fees charged, but rather on the absence of reliable evidence demonstrating the reasonableness of the hours attributed to her legal work.  I concluded that the billing records were unreliable on their face, claiming an amount of hours that was not credible.  As I stated in my order, "given the state of the record, I cannot parse her billings to determine what portion of the claimed

hours were reasonably charged other than by speculation or application of some arbitrary formula." ECF. No. 556, p. 50.  Johnson would now have me review those records and come up with an arbitrary discount, or simply estimate what a reasonable amount of time would have been for each task listed.  However, as I have stated, given the unreliability of the hour totals it would be an exercise in speculation to make any kind of determination regarding what work was performed and what a reasonable attorney would have done in those circumstances.  As the United States Supreme Court recently noted, "trial courts need not, and indeed should not, become green-eyeshade accountants."  *Fox v. Vice*, __ S.C. ___, Case No. 10–114, 2011 WL 2175211 at *8 (U.S. June 6, 2011).  More to the point, it is not my role to root out from the record some fair amount of compensation.  As was noted by the then 7th Circuit, "[j]udges are not like pigs, hunting for truffles buried in briefs."  *United States v. Dunkel,* 927 F.2d 955, 955 (7th Cir. 1991).

Although the Tenth Circuit has found that a "general reduction of hours claimed" is not erroneous, provided there is sufficient reason for its use, *Mares*, 801 F.2d at 1203, Johnson cites no case law requiring such an analysis where the billing records do not appear to accurately reflect the hours actually worked and no other evidence or guidance is presented from which I could reliably determine the reasonableness of the hours billed.  Therefore, I will deny the motion.  Johnson has really only revisited issues already decided.  She presents no new evidence, points to no changes in law and demonstrates no clear error or suggestion of manifest injustice.

2.  Claimant Johnson Estate's Motion for Recovery of Attorneys' Fees and

6

Expenses Incurred in Obtaining Judgment Against Plaintiff (ECF No. 576)

Johnson seeks attorneys' fees incurred in recovering the judgment obtained against Deitz.  As grounds, she contends Deitz agreed in the original September 22,1995 fee agreement to pay fees and costs incurred in collecting amounts owed. Johnson argues that the subsequent amendments to the original fee agreement did not supersede or eliminate this obligation.  Alternatively, Johnson relies upon the March 18, 1996 draft promissory note[4] that Deitz and her then husband indicated they would sign, which contains an agreement to "pay or reimburse" the note holder for expenses incurred in collecting on the debt.

Johnson argues that the record establishes that Deitz failed to pay the amounts owed under the agreement and that the efforts undertaken thereafter, including the filing of the attorney's lien and years of litigation, are costs and expenses incurred in collecting amounts due.  Johnson seeks recovery for all work done by the attorneys in efforts to collect the fees allegedly owed, in a total amount of $87,811.52, as well as costs of $6,329.02.  Johnson has provided billing records and an appropriate affidavit from an independent attorney attesting to the reasonableness of the hours and rates.  It is undisputed that Johnson's attorneys have provided their services *pro bono* in the post-settlement litigation regarding enforcement of the attorney's liens.  Johnson's retainer agreement with counsel does not obligate Johnson to pay attorneys' fees but the attorneys reserve the right to seek such fees from third parties.  Ex. B to Johnson's

---

[4]Although different drafts were presented, they varied only as to interest rates and similar terms; the substantive terms, including the default and collection provisions, were the same in all three drafts.

7

Mot. for Atty Fees, ECF. No. 576-3 ("The Firm will not charge the Client any fees for professional services in this matter, except that the Firm reserves the right to seek award of attorneys' fees from other parties who may be liable for such fees and to charge the Client the full amount of any fees actually recovered.").

I must first examine whether these contract provisions are enforceable and whether they apply in these circumstances.  In my Amended Order, I concluded in the alternative that the February 19, 1996 "Amended Legal Services Agreement" superseded and replaced the September 22, 1995 agreement and was thereafter modified by the February 26, 1996 letter.  That is, the February 26 letter did not purport to supplant the February 19 "Amended Legal Services Agreement," only to change some of its terms. Under this formulation[5] the attorneys' fee provision contained in the February 19, 1996 Amended Legal Services Agreement survives and remains enforceable even though the February 26 letter contained no attorney fee provision.

The question arises, however, whether this provision should apply when Johnson has not actually paid any attorneys' fees or other expenses.  The agreement states: "If I incur any costs or expenses in collecting any amounts due, you agree to pay such costs and expenses, including reasonable attorneys' fees."  Deitz argues that Johnson has not incurred any expenses in collecting amounts due because the attorneys did not charge and neither Ms. Johnson nor the estate has paid any costs, fees, or expenses.

I agree with Deitz that Johnson did not "incur" any costs or expenses.  Johnson

---

[5]In my Amended Order, I alternatively concluded that by an accord the parties accepted the February 26 agreement as a substitute to supplant or discharge the earlier agreements.  ECF No. 556, p. 24.  Such analysis means there was no agreement to pay fees and costs since the February 26 agreement contains no such provision.

argues that "incur" does not mean the same as "pay" and the mere fact that counsel did not bill does not mean that Johnson did not incur those fees.  Black's Law Dictionary defines "incur" as "To suffer or bring on oneself (a liability or expense)."  Black's Law Dictionary (9th ed. 2009).  Johnson owes no debt and has no liability for any fees.  Under the plain and ordinary meaning of the words presented, Johnson did not personally incur any costs or expenses, and, hence, did not trigger recovery under the attorneys' fees provision.

        This is an unusual situation and as the parties acknowledge, there is little, if any, case law involving a similar contractual attorneys' fees provision when attorney services are provided *pro bono*.  Johnson places significant emphasis on the case of *Gotro v. R&B Realty Grp.*, 69 F.3d 1485, 1486-87 (9th Cir. 1995), which was cited by the Tenth Circuit in *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1135 (10th Cir. 2001).  In *Gotro*, the Ninth Circuit analyzed whether statutory attorneys' fees could be awarded in an improvidently removed case when the plaintiff's attorney was working pursuant to a contingency fee agreement.  The fee agreement provided that the plaintiff's attorneys would receive a portion of any damages she recovered from the defendants; the fee agreement also stated that any statutory attorneys' fees or sanctions awarded would belong to her attorneys.  The Ninth Circuit examined the language of 28 U.S.C. § 1447(c), which provides that an order remanding an improperly removed case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  The defendants argued that since the plaintiff did not incur an obligation to pay any fees as a result of the removal, the district court was not authorized to award such fees.  The Ninth Circuit, reviewing the language and

9

legislative history of the provision, decided that Congress did not intend to limit a district court's discretion to award fees in cases involving contingency fee agreements.

There are significant differences, however, between the language of section 1447(c) and the contractual language at issue here.  The statute permits an award of costs and expenses "incurred as a result of the removal."  This language is broad enough to include fees incurred by anyone as a result of the removal, not specifically the client.  Indeed, the district court in *Gotro* "stated that its granting of the attorneys' fees 'was not based upon a belief that the plaintiff, the client herself, had incurred the cost and expense as opposed to the law firm.'"  69 F.3d at 1488 (addressing the question of whether Rule 11 sanctions were merited because of the plaintiff's attorneys' alleged failure to make clear that the client had no obligation to pay the fees herself).  In *Gotro*, as here, certainly professional work was performed for which fees are normally charged, they simply were not incurred as an expense, debt, or liability by the client but rather by the lawyers performing the services.  However, unlike the broad language of section 1447, which could encompass an award of such fees, the contractual provision at issue here limits recovery to fees and expenses incurred by Ms. Johnson herself. Therefore, I decline to award Johnson any attorneys' fees pursuant to the Amended Legal Services Agreement.

I also note that the attorneys' fee provision serves only a private interest and not a public purpose as in fee-shifting statutes.  As such, the obligation must be tied solely to the parties' express agreement and not interpreted to further the public purpose of the statute.  *See*, *e.g. Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 439 F.Supp. 393, 406-7 (D.Colo. 1977).

10

Finally, the same result would obtain if the accord analysis argued by the parties was the controlling alternative since the February 26 letter encompassing the accord agreement contains no attorney fee provision. *See* Note 5 *supra*.

Turning briefly to the Johnson claims based on the unsigned promissory notes, I conclude that the attorney fee language of the notes, if binding on the parties, would lead to the same result. The note provides that the makers "shall pay or <u>reimburse</u> the Holder for all reasonable expenses, including the reasonable attorney's fees and costs, . . . <u>incurred</u> [in collecting the amounts due]." (emphasis added). The use of the word "reimburse" contemplates an actual payment by the holder, which will then be repaid by the maker. The phrasing "pay or reimburse the holder for all reasonable expenses . . . incurred" again strongly indicates that the maker's obligation to pay is triggered by expenses incurred by the Holder, not some other party or a *pro bono* attorney. Again, this language suggests an intention that Ms. Johnson not suffer financially as a result of expenses personally incurred in collecting the amounts due her. There is no evidence that she incurred or made any such payment. Accordingly, the estate's motion should be denied.

3.   <u>Brake Law Firm's Motion to Reduce the Attorneys' Lien to Judgment</u> (ECF No. 444)

In my Amended Order, I concluded that the notice of lien, which was asserted by Andrew Brake, Brian Lewis, and Lee Judd "of the law firm Andrew T. Brake P.C.," was timely filed and that a proper civil action was filed within the statute of limitations. The motion to reduce the lien to judgment was also filed by Andrew Brake, Brian Lewis, and Lee Judd "of the law firm Andrew T. Brake P.C." They claim $25,000 pursuant to a

contingency fee agreement and $5,010.69 in unpaid costs and expenses, plus interest. Johnson opposed the motion (ECF No. 446) arguing that pursuant to the Magistrate Judge's order, Johnson was entitled to the entire settlement proceeds and the superior lienor. Since my Amended Order modified the Magistrate Judge's ruling regarding these issues, the validity of the lien and reasonableness of the fees claimed must be examined on the merits.

I first address the objection asserted by Johnson regarding the validity of the lien notice and the motion to reduce the lien to judgment, which is whether the notice and lien are filed on behalf of the attorneys individually or on behalf of the firm. I conclude based on the language of the lien notice and the statements of Mr. Brake at the hearing that the notice and motion were filed by the attorneys on behalf of the law firm, not in their individual capacities. Accordingly, I will consider whether the Brake Law Firm is entitled to enforce the lien against the settlement proceeds.

As I previously noted, the Colorado statute grants lien rights in the judgment, or in this case, the settlement amount, that the lawyer "obtained or assisted in obtaining, in whole or in part . . .." Colo. Rev. Stat. § 12-5-119. I ruled in my Amended Order that Brake had obtained or assisted in obtaining the settlement here. The lien may be perfected by filing a proper notice with the Clerk of the Court where the action is pending. *Id*. The notice shall set "forth specifically the agreement of compensation between such attorney and his client. . ." *Id*. Brake's notice of lien sets forth the particulars of a written fee agreement between Deitz and the firm of Andrew T. Brake P.C. dated March 24, 1996, including that the firm would receive one-third of the gross amount of any recovery. ECF No. 412. Then, to enforce the lien, the claimant must

12

bring a "proper civil action." Colo. Rev. Stat. § 12-5-119. I previously determined that Brake has satisfied this requirement.

Again, and just as I did with the analysis of the Johnson claim, this matter proceeds as a lien enforcement which means that the lien claim is limited to a reasonable amount even if the parties agreed to a larger amount. *People ex rel McFarlane*, 195 Colo. 38, 42, 581 P.2d 716, 718 (1978) (statute "gives the attorney a lien on the judgment <u>to the extent of his reasonable fees</u> . . .") (emphasis added). As the lien claimant, the Brake law firm has the burden of persuasion. *Brd. of Cty Comm. of Jefferson Cty. v. Quaintance*, 116 Colo. 544, 183 P.2d 569 (1947). The only real evidence presented by the Brake Law Firm concerning reasonableness was the statement of attorney fees and costs (ECF No. 520) which includes reconstructed time/billing records and affidavits of one of the attorneys and office manager. As Johnson observes, the time entries are cryptic and minimal, even failing to indicate which case was being worked on. This statement does not meet the standards of D.C. COLO.LCivR 54.3 that a motion for attorney's fees be verified and contain:

    1. a detailed description of the services rendered, the amount of time spent, the hourly rate, and the total amount claimed; and

    2. a summary of relevant qualifications and experiences.

D.C.COLO.LCivR 54.3 B. Nor do the Brake firm's filings satisfy § 7 of my Pretrial and Trial Procedures requiring that any motion for attorneys' fees also "attach an affidavit of an independent attorney (not representing any party in the litigation) concerning the reasonableness of the hourly rates and hours claimed by the movant."

At the June hearing, the Brake firm seemed to rely upon the fact that it had

agreed with the Plaintiff that the fees due were $25,000, with no interest, apparently urging that such agreement demonstrates the reasonableness of the fee.  I disagree. Just as I held with respect to the Johnson agreement with the Plaintiff to set the fees owed as $120,000, which Judge Schlatter and I both found to be unreasonable, mere agreement does not make the fee charges reasonable.

My February 22, 2011 Amended Order plainly states how the reasonableness of the fee is proved, including consideration of the factors listed in Rule 1.5 of the Colorado Rules of Professional Conduct and the use of the lodestar calculation to determine a reasonable fee.  *See* ECF No. 556 at p. 26.  The Brake firm's presentation concerning reasonableness completely ignores those guideposts and fails to provide any evidence of reasonableness. No expert has opined and the time records provided are so general that it would be impossible for a court to make an independent judgment as to the reasonableness of the fees as they certainly do not meet the expectation of this circuit to keep meticulous records to allow determination of hours allotted to specific tasks. *See Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983).  Accordingly, I again conclude that there simply has been a failure of proof of the reasonableness of the claimed fees.

With respect to the claimed costs, although the Notice of Attorney's Lien claimed $5,010.69 in costs owed, the verified amount claimed in the Statement of Attorney's Fees and Costs is only $4,780.32.  There was no dispute between the Brake firm and the Plaintiff as to this amount and it may appropriately be included in a judgment for the lien claim.  As a consequence, the Brake Law Firm's motion should be granted in part and denied in part.

14

Accordingly, it is ordered:

1.  Claimant Johnson Estate's Motion to Alter or Amend Judgment (ECF No. 573) and Motion for Recovery of Attorneys' Fees and Expenses Incurred in Obtaining Judgment against the Plaintiff (ECF No. 576) are denied.

2.  The Motion to Reduce Plaintiffs' [sic] Attorney's Lien to Judgment (ECF No. 444) is granted in part and denied in part.  The lien may be enforced against the settlement funds contained in the court's Registry in the amount of $4,780.32, with no prejudgment interest.  The motion is otherwise denied.

3.  After payment of the amount due Johnson, pursuant to my February 22, 2011 Amended Order (ECF No. 556) and the $4,780.32 due the Brake firm pursuant to this order, the balance shall be paid forthwith to the Plaintiff.

4.  The stay set forth in my March 8, 2011 order granting claimant Johnson Estate's Motion for Stay of Distribution of Funds Held in Court Registry shall be vacated on July 15, 2011.

5.  Judgment shall enter accordingly.

DATED at Denver, Colorado, on June 28, 2011.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge